THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAPITOL PROS, INC., | CASE NO. C17-1410-JCC |
| Plaintiff, | ORDER |
| v. | |
| VADATA, INC., f/k/a. AMAZON.COM, | |
| Defendant. | |

This matter comes before the Court on Defendant Vadata's motion to dismiss (Dkt. No. 15). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

## I. BACKGROUND

Plaintiff Capitol Pros is a commercial cleaning company that provided Defendant Vadata, Inc., a division of Amazon.com, cleaning services at its Virginia location from 2005 to 2013. (Dkt. No. 1 at 2.) A 2008 master services agreement ("MSA") last governed the parties' relationship, under which they contracted for specific work through work orders incorporated into the MSA. (*Id.*) In July 2011, Ryan Maheepat became Defendant's representative assigned to manage the parties' contractual relationship. (*Id.* at 3.) Plaintiff alleges that Mr. Maheepat forced it to hire his parents and friends and threatened Plaintiff with the loss of its current and future

contracts if it declined to do so. (*Id*. at 4–5.) Plaintiff asserts that these workers were "unproductive and unprofessional," and their hiring involved a number of irregularities—including refusal to sign non-compete agreements. (*Id*. at 5.) However, Plaintiff felt unable to discipline these workers or demand compliance with normal procedures due to Mr. Maheepat's threats to terminate the contract. (*Id*.) In January 2013, Plaintiff found out these employees were simultaneously working for a competitor, Barnard Building Services ("BBS"). (*Id*.)

Around the same time, the parties finalized a work order adding an additional building to Plaintiff's contract—identified as IAD15. (*Id*. at 6.) Before Plaintiff began work on the order, it observed BBS employees working in IAD15. (*Id*.) Upon Plaintiff's inquiry, Defendant reported that it had given BBS the contract for IAD15, removing Plaintiff from the building. (*Id*.) Plaintiff asserts that its employees who also worked for BBS would then spend less time in its buildings, and more time in IAD15, causing the appearance of a decline in the quality of Plaintiff's work. (*Id*.) In late summer 2013, these employees all quit within weeks of each other. (*Id*. at 7.) In September 2013, Defendant subjected Plaintiff to its first business review in eight years; Mr. Maheepat participated in the review. (*Id*.) As a result of this review, Defendant declined to extend Plaintiff's contract and instead engaged BBS to provide cleaning services. (*Id.* at 8.) Plaintiff now asserts claims for breach of contract and violation of the Washington Consumer Protection Act based on this conduct. (*Id*. at 8, 10.)[1] Defendant moves to dismiss all claims, arguing that the complaint fails to state any plausible claim for relief.

## II. DISCUSSION

### A. Legal Standard

A defendant may move to dismiss when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and construes them in the light most favorable to the

---

[1] Plaintiff has voluntarily dismissed its cause of action for intentional interference with a contractual relationship. (*See* Dkt. No. 19.)

nonmoving party. *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007). However, "conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper motion to dismiss." *Id*. (quotation omitted). To survive a motion to dismiss, a plaintiff must cite facts supporting a "plausible" cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (internal quotations omitted).

Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003). However, a court may consider evidence on which the complaint "necessarily relies" if the complaint refers to the document, the document is central to the plaintiff's claim, and no party questions the authenticity of the copy attached to the 12(b)(6) motion. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). With these elements met, the Court will consider the contents of the contract at issue in this case. (Dkt. Nos. 1-2, 1-3).

### B. Breach of Contract

To succeed on a breach of contract claim under Washington law, Plaintiff must prove a valid contract term between parties imposing a duty, a breach of that duty, and resulting damages. *See Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 899 P.2d 6, 9 (Wash. Ct. App. 1995); Washington Pattern Jury Instructions No. 300.01 (6th ed. 2013).

Plaintiff alleges that Defendant breached the express terms of its MSA and the January 2013 work order in two ways. First, Defendant prevented Plaintiff from performing work on building IAD15 without providing the contractually-required notice of termination. Second, Defendant breached the MSA's personnel provision by interfering with Plaintiff's employee management. (Dkt. No. 1 at 8–9.) Defendant contends no breach occurred because the work order was unilaterally modified, and the personnel provision granting Plaintiff exclusive control over its employees did not create a contractual duty on its part. (Dkt. No. 15 at 10–12.)

1. Failure to Notify Regarding Work Order Alteration

Plaintiff alleges that Defendant failed to honor or properly amend its January 2013 work order that included building IAD15 in Plaintiff's scope of work. (Dkt. No. 1 at 8.) Defendant moves to dismiss Plaintiff's breach of contract claim, arguing unilateral modification.

The MSA allows Defendant to terminate any work order, or portion thereof, without cause by giving thirty-days written notice. (Dkt. No. 1-2 at 2.) It also requires any work order modification to be in writing and signed by both parties. (Dkt. No. 1-2 at 6.) No party may waive any right under the MSA without written waiver. (Dkt. No. 1-2 at 6.) The parties do not dispute that the July 2013 work order included building IAD15 in Plaintiff's scope of work, or that Defendant removed the building from Plaintiff's scope of work without written notice. Defendant instead characterizes these actions as a unilateral modification of the work order and asserts that no written notice was required. (Dkt. No. 15 at 10.)

Under Washington law, "a terminable-at-will contract may be unilaterally modified" with reasonable notice. *Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co.*, 145 P.3d 1253, 1256 (Wash. Ct. App. 2006). Plaintiff does not dispute this contract was terminable at will, but argues that Defendant's unilateral modification theory applies only to "cases involving employer-employee relationships" and not to their services contract. (Dkt. No. 18 at 6.) Plaintiff relies on *Cato Sales & Trading*, where the Court declined to apply an employer-employee oral promise doctrine to an agency contract. *Cato Sales & Trading v. Cosmo Specialty Fibers, Inc.*, Case No. C14-5549-BHS, Dkt. No. 82 at 3–4 (W.D. Wash. 2015). But this finding did not preclude the Court from applying the principle of unilateral modification of a terminable-at-will contract. *Id.*; *accord Mall Tool Co. v. Far W. Equip. Co.*, 273 P.2d 652, 655 (Wash. 1954). Still, a unilateral modification requires offer, acceptance, consideration, and reasonable notice. *Id*. Parties dispute whether reasonable notice, mutual assent, and consideration existed here.

Plaintiff argues it did not receive reasonable notice because it did not receive advance notice of its replacement on building IAD15. (Dkt. No. 18 at 7.) The Court finds no authority for

this proposition. The Ninth Circuit has interpreted reasonable notice broadly. *Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1260 (9th Cir. 2005) (*citing Gaglidari v. Denny's Restaurants, Inc.*, 815 P.2d 1362, 1367 (Wash. 1991) (finding narrow instance of unreasonableness where employer expected former employees to return to retail locations to check for contract changes). Although it is generally unfair to place the burden of discovering contract changes on an employee, assignment of a competing firm to a worksite followed by verbal confirmation reasonably notified Plaintiff of a modification. (Dkt. No. 18 at 7.) Additionally requiring advance notice would cut against the doctrine of unilateral modification and undermine the efficiencies of such contracts. *See Duncan v. Alaska USA Fed. Credit Union, Inc.*, 199 P.3d 991, 1004 (Wash. Ct. App. 2008) (requiring formal termination undermined efficiencies for modifying at-will contracts). On the facts pled, the Court finds Defendant provided reasonable notice.

Plaintiff also argues that it did not assent to a modification. (Dkt. No. 18 at 6.) Generally, whether there has been mutual assent to the terms of a contract is a question of fact. *Plese-Graham, LCC v. Loshbaugh*, 269 P.3d 1038, 541 (Wash. Ct. App. 2011); *see also Cato*, Dkt. No. 82 at 7. However, when reasonable minds could reach only one conclusion, the Court can determine questions of fact as a matter of law. *Cascade Auto Glass*, 145 P.3d at 1256. A party may accept a unilateral modification of a work order by continued performance after reasonable notice. *Id*. at 1257*; Govier v. N. Sound Bank*, 957 P.2d 811, 817 (Wash. Ct. App. 1998). Here, Plaintiff continued to perform after reasonable notice. (Dkt. No. 11 at 6). Thus, the Court finds the existence of mutual assent to the modified work order.

Finally, Plaintiff asserts that Defendant's payments for its continued work under the January 2013 work order do not qualify as consideration. (Dkt. No. 18 at 7.) While continued performance proves acceptance, it does not necessarily indicate consideration. *Cato Sales & Trading*, Case No. C14-5549-BHS, Dkt. No. 82 at 4. But consideration exists in any legal detriment, however small. *Storti v. Univ. of Washington*, 330 P.3d 159 (Wash. 2014). When Plaintiff received notice of unilateral modification, it had the choice to preserve the benefit of

continued business with Defendant by continuing to perform instead of terminating the agreement. *See Mall Tool Co.*, 273 P.2d at 655. Foregoing the right to terminate constitutes sufficient consideration in the context of unilateral modification. *Id*. As a result, the Court finds adequate consideration for the modification. Therefore, Plaintiff has not pled a plausible break of contract claim based on changes to the January 2013 work order.

2. Breach of Employment Authority

Defendant next moves to dismiss Plaintiff's breach of contract claim on the basis that Plaintiff does not have a contractual right to exclusive control over its employees. (Dkt. No. 15 at 10.) The contract's personnel provision states:

> "[Plaintiff] has exclusive control over its employees, representatives, agents, contracts and subcontractors (collectively, "Personnel") and over its labor and employee relations and its policies relating to wages, hours, working conditions and other employment conditions. [Plaintiff] has the exclusive right to hire, transfer, suspend, lay off . . . discipline, discharge and adjust grievances with its Personnel."

(Dkt. No. 1–1.) Defendant argues that this language does not create a duty or obligation for it to refrain from interfering with Plaintiff's employee management because, as a business policy statement, it does do not give rise to legal obligations.[2] (Dkt. No. 15 at 9–10.) But Plaintiff's claims do not involve business policy statements. The parties dispute the application of the personnel provision of their legally binding contract. Defendant's argument contradicts the plain language of the contract. The personnel provision makes clear, as Defendant acknowledges, that Plaintiff's "personnel could not be treated as employees of [Defendant]." (Dkt. No. 15 at 10.)

Defendant also argues that the intention of this provision is to disclaim liability in the event of a dispute and to disavow an agency relationship with Plaintiff. (Dkt. No. 20 at 7.) In making this argument, Defendant identifies two lines in the provision. *Id*. Defendant does not

---

[2] Defendant's motion points out that aspirational reporting policies and explanatory notes do not create legal obligations. (Dkt. No. 15 at 10.); *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F. Supp. 3d 1166, 1173 (W.D. Wash. 2014), aff'd, 691 F. App'x 406 (9th Cir. 2017). Those types of documents are not at issue in this case.

address the following line: "[Plaintiff] has the exclusive right to hire, transfer, suspend, lay off . . . discipline, discharge and adjust grievances with its Personnel." (Dkt. No. 1-2 at 3.) If Defendant intended to condition business on affecting Plaintiff's hiring decisions and work policies, then it should have reasonably excluded this line from its services contract. On the facts alleged, conditioning future business on hiring friends and family of the Defendant's employee plausibly amounts to an exercise of control over Plaintiff's hiring and management decisions and contravenes the contract.

The MSA's limitations on liability preclude claims for consequential or punitive damages. (Dkt. No. 1-2 at 5.) As such, Defendant argues that Plaintiff would only be able to "seek expectation damages" under a breach of contract claim. (Dkt. No. 15 at 12.) Expectation damages identify the sum of money that would have "put the injured party in as good a position as that party would have been in had the contract been performed." *Mason v. Mortg. Am., Inc.*, 792 P.2d 142, 146 (Wash. 1990). Plaintiff plausibly alleges facts that Defendant's interference with Plaintiff's hiring decisions and work policies, and its employees' simultaneous engagement with a competitor—at the behest of Defendant's employee—practically impaired Plaintiff from receiving compensation for its agreed-upon work order. (Dkt. No. 18 at 8.)

Construing all factual allegations in a light most favorable to Plaintiff, the complaint asserts a plausible claim for breach of contract. Accordingly, Defendant's motion to dismiss Plaintiff's breach of contract claim is DENIED.

### C. Washington Consumer Protection Act

To state a claim under the Washington Consumer Protection Act ("CPA"), Plaintiff must allege conduct by Defendant constituting (1) an unfair or deceptive practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to Plaintiff's business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531 535 (Wash. 1986). Taking allegations in the complaint as true, the Court finds that Plaintiff fails to plead sufficient facts showing an unfair or deceptive practice affecting the public interest.

For conduct to be an unfair or deceptive practice under the CPA, it must have the "capacity to deceive a substantial portion of the public." *Hangman Ridge*, 719 P.2d at 535. Washington courts have excluded from the CPA "deceptive acts and practices that are unique to the relationship between plaintiff and defendant." *Behnke v. Ahrens*, 294 P.3d 729, 736 (Wash. Ct. App. 2012). Plaintiff alleges Defendant "wrongfully interfered and impeded [Plaintiff's] performance and then used the poor performance results against [Plaintiff] to [its] own commercial advantage." (Dkt. No. 18.) Plaintiff makes two arguments as to why this conduct was unfair and deceptive: (1) Defendant unfairly used a form contract, and (2) Defendant caused Plaintiff's employees to breach their fiduciary duties.

First, Plaintiff alleges Defendant uses form contracts as "carrots" to gain an unfair advantage over vendors—a practice that could deceive a substantial portion of the public. (Dkt. No. 18 at 11.) Plaintiff does not specify which contract terms provide Defendant an unfair advantage. Nor does the complaint make general allegations that Defendant's use of form contracts is unfair or deceptive. (*See generally* Dkt. No. 1.) Rather, the complaint challenges the behavior of Defendant's employee, Mr. Maheepat, and argues that Plaintiff breached the contract. (*See* Dkt. No. 1.) Furthermore, the fact that Defendant may engage in additional commercial dealings under a similar contract does not alone indicate conduct with the potential to deceive a "substantial portion of the public." *See Hangman Ridge*, 719 P.2d at 535; *Segal Co. (Eastern States), Inc. v. Amazon.com*, 280 F. Supp. 2d 1229, 1233 (W.D. Wash. 2003) (dismissing a CPA claim where plaintiff made no assertion that defendant contacted members of the public or executed contracts with other parties).

Second, Plaintiff argues that Defendant "facilitated breach of fiduciary duty by Plaintiff's employees." (Dkt. No. 18 at 12.) Even taken as true, this allegation alone does not state a plausible claim for relief under the CPA. Plaintiff must also allege facts tending to show "real and substantial potential for repetition" of this conduct. *See Behnke*, 294 at P.3d at 737. Instead, facts pled suggest that this conduct was unique to the relationship between Defendant/Mr.

ORDER
C17-1410-JCC
PAGE - 8

Maheepat and Plaintiff. *See id*. at 735–36. Therefore, Plaintiff fails to plausibly allege an unfair or deceptive practice extending beyond the two parties to the contract.

A private dispute does not typically meet the CPA's public interest element. *Hangman Ridge*, 719 P.2d at 538. However, the likelihood that "additional plaintiffs have been or will be injured in exactly the same fashion [can change] . . . a private dispute to one that affects the public interest." *Id*. Relevant factors include: (1) whether the alleged acts occurred in the course of Defendant's business, (2) whether Defendant advertised to the general public, (3) whether Defendant actively solicited Plaintiff, and (4) whether parties occupy positions of unequal bargaining power. *Id*. Here, Plaintiff relies on an assertion—without factual support—that Defendant uses form contracts unfairly. (Dkt. No. 18 at 11.) Plaintiff puts forward no facts regarding advertising or solicitation, or factual content that would otherwise allow the Court to reasonably infer that other plaintiffs are likely to be harmed in exactly the same manner. *See Ashcroft*, 556 U.S. at 672; *Hangman Ridge*, 719 P.3d at 538.

Having found that Plaintiff fails to allege facts plausibly meeting the first and third elements of a CPA claim, the Court finds it unnecessary to reach Defendant's other arguments. Plaintiff's CPA claim is DISMISSED. Because the Court is not convinced that no amendment could possibly cure the flaws in Plaintiff's CPA claim, this dismissal is without prejudice.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. No. 15) is DENIED as to Plaintiff's breach of contract claim and GRANTED as to Plaintiff's Washington's Consumer Protection Act claim. This claim is DISMISSED without prejudice and with leave to amend.

DATED this 14th day of February 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE